IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS KONNETHU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1465 |
| | § | |
| HARRIS COUNTY HOSPITAL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION**

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 16). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS IN PART, DENIES IN PART** Defendant's motion.

I.  **Case Background**

Plaintiff Thomas Konnethu ("Plaintiff"), an Asian Indian, filed this action against his employer Harris County Hospital District ("Defendant"), claiming race and national origin discrimination. He raised claims of hostile work environment, discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII")[2] and 42 U.S.C. § 1981 ("Section 1981").

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 12.

[2]    42 U.S.C. §§ 2000e-2000e-17.

In 1992, Plaintiff received an associate degree in respiratory care.[3]   On October 7, 1997, Defendant hired Plaintiff as a respiratory therapist technician.[4]   Since 1999, Plaintiff has worked in the Neonatal Intensive Care Unit ("NICU") under the supervision of Sandra Noworyta ("Noworyta"), Operations Manager.[5] While continuing to work for Defendant in this capacity, Plaintiff earned a Bachelor of Science in management in March 2007, and a Master of Business Administration in December 2008, both from the University of Phoenix.[6]   At the time this litigation commenced, Defendant employed Plaintiff as a Respiratory Care Practitioner III, which qualified him to work in the neonatal, pediatric, and adult areas of the department.[7]

In October 2006, Plaintiff attempted to apply for the position of Operations Manager at Lyndon B. Johnson Medical Center ("LBJ").[8] Plaintiff twice e-mailed Thomas Force ("Force"), Director of

---

[3]     Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 16:13-20.

[4]     Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 9; Defendant's Original Answer, Docket Entry No. 7, ¶ 10.

[5]     Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 24:8-18.

[6]     Id. at 42:2-46:6.

[7]     Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(a); Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. A, Documentary Evidence, Response of Defendant to Charge (12/7/2007), p. 5.

[8]     Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(c)-(d); Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 29:18-24.

Respiratory Care, to inquire about the position.[9]  Force responded
to Plaintiff's first e-mail on the same day, giving Plaintiff an
overview of the position.[10]  Force's response to Plaintiff's second
e-mail stated: "We are going to develop a cleaning exam to
determine applicants['] critical knowledge.  Will let you know when
it is ready."[11]

Plaintiff believed that his e-mail inquiry with Force was
sufficient to be considered for the position.[12]  Plaintiff never
received a call about screening for the position but several days
later received an e-mail from Force stating that Defendant had
hired Matt Lewis ("Lewis"), a white male, for the position.[13]
Lewis, already a supervisor in another department, had more
experience than Plaintiff in respiratory care and in management.[14]

In September 2007, Plaintiff applied for another open
position, Operations Manager for Pulmonary Diagnostics, located at

---

[9]     Plaintiff's Response to Defendant's Motion for Summary Judgment,
Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(d); Exhibits to Defendant's
Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff,
31:6-32:9.

[10]    Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No.
17, Ex. B, Deposition of Plaintiff, 32:7-17.

[11]    Id. at 33:12-15; Plaintiff's Response to Defendant's Motion for
Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(d).

[12]    Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No.
17, Ex. B, Deposition of Plaintiff, 35:1-14.

[13]    Id. at 34:7-9, 39:4-6; Plaintiff's Response to Defendant's Motion
for Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(d).

[14]    Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No.
17, Ex. B, Deposition of Plaintiff, 51:9-24.

Ben Taub Medical Center ("BTMC").[15]  This position required the applicant to be a certified Registered Pulmonary Function Technologist and a certified Registered Cardio-Pulmonary Technologist; Plaintiff had neither certification.[16]  Plaintiff also lacked experience in some of the position's primary duties, including experience in: (1) reviewing pulmonary function test reports to submit to medical staff; (2) summarizing and reporting on department performance improvement projects; (3) managing pulmonary function diagnostic charges; (4) performing pulmonary function testing and exercise training; and (5) operating equipment and pulmonary function testing systems.[17]  Plaintiff had performed some pulmonary function testing, but not in more than fifteen years.[18]

The job requirements for the position at BTMC also included five years of experience either in a pulmonary function laboratory

---

[15]     Id. at 61:9-62:21; Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 10; Defendant's Original Answer, Docket Entry No. 7, ¶ 11; Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(e).

[16]     Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 67:4-18, 72:3-20; Ex. C, Exhibits to Deposition of Plaintiff, Ex. 4: Position Title Operations Manager PUL Diagnostics; Ex. 5: Deposition of Plaintiff, Job Postings Online for Ben Taub Operations Manager Pulmonary Diagnostic; Ex. 6: E-mails between Force and Plaintiff, Feb. 18, 2008.

[17]     Id. at Ex. B, Deposition of Plaintiff, 60:1-15, 69:9-25, 71:1-2; Ex. C, Exhibits to Deposition of Plaintiff, Ex. 4: Position Title Operations Manager PUL Diagnostics; Ex. 5: Job Postings Online for Ben Taub Operations Manager Pulmonary Diagnostic.

[18]     Id. at Ex. B, Deposition of Plaintiff, 70:23-71:6.

4

or in hospital respiratory therapy.[19]  Plaintiff had this particular qualification, but the position went to another employee, Robbie Simmons ("Simmons"), who had worked in the Pulmonary Function Department for "many years."[20]  Plaintiff states that Force told him that Simmons did not have "any of th[e] qualifications" for the position, but, at the time, Plaintiff did not complain to Force that the decision to promote Simmons was unfair.[21]  Plaintiff later learned of two other open Operations Manager positions but did not apply because he did not believe he would be hired.[22]

Between December 13, 2004, and November 14, 2007, Plaintiff received at least four written warnings regarding argumentative behavior.[23]  In October 2007, following an altercation with a fellow respiratory care therapist, Refugio Fernandez ("Fernandez"),

---

[19]    Id. at 64:15-65:12; Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(e).

[20]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(e); Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 78:1-6.

[21]    Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18, Affidavit of Plaintiff, ¶ 3(e); Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 78:5-6, 79:11-22.  Plaintiff knew nothing about Simmons other than that she was a woman who "look[ed] like a[n] African-American."  Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 79:11-22.

[22]    Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 81:11-90:14.

[23]    Id. at Ex. A, Documentary Evidence, Employee Report of Oppositional and Argumentative Behavior (12/13/04), p. 7; Employee Report—Inappropriate Behavior (11/23/05), p. 10; Employee Counseling Form—Argument with Co-Worker, Disruption (02/08/07), p. 11; Employee Counseling Form—Argumentative Behavior (11/14/07), p. 12.

Plaintiff refused to sign a written counseling form warning him to avoid arguments with fellow staff members. Subsequently, he was transferred from the NICU work area to the adult respiratory care area, where he was also qualified to work.[24] He was officially given the warning for the October incident on November 14, 2007, and Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 28, 2007.[25]

In that charge, Plaintiff alleged discrimination based on his race and national origin, Asian Indian, arising out of several employment actions.[26] Plaintiff claimed, without providing factual detail or a time frame, that his supervisor, Noworyta, constantly interrogated and harassed him.[27] He complained that he unsuccessfully applied for a supervisor position at LBJ Hospital, and that in September 2007, the successful applicant, Lewis, was subsequently promoted to Assistant Director without the position being posted for applications.[28] Plaintiff also alleged that a co-worker, Fernandez, questioned him "unreasonably" and that Plaintiff

_____

[24]   Id. at Ex. A, Documentary Evidence, Response of Defendant to Charge (12/7/2007), p. 5; Ex. B, Deposition of Plaintiff, 93:20-106:16.

[25]   See id. at Ex. A, Documentary Evidence, Employee Counseling Form—Argumentative Behavior (11/14/07), p. 12; Defendant's Correction to Ex. A Supporting Defendant's Motion for Summary Judgment, Docket Entry No. 20, Plaintiff's EEOC Charge of Discrimination.

[26]   See Correction to Ex. A Supporting Defendant's Motion for Summary Judgment, Docket Entry No. 20, Ex. 1, Charge of Discrimination.

[27]   Id.

[28]   Id.

6

received a written counseling for being argumentative with Fernandez, despite Plaintiff's view that he had done nothing wrong.[29]  Finally, Plaintiff complained that his transfer to the adult respiratory care unit caused a hardship because his shift had changed.[30]

On March 7, 2008, Plaintiff received his right to sue letter. On May 12, 2008, Plaintiff timely filed the present suit.  In his complaint, he alleged violations of Title VII and Section 1981 based on the denial of a promotion in favor of an African-American candidate.[31]  Plaintiff complained that the transfer to an adult respiratory care unit affected his health and that Defendant's refusal to accommodate his request to return to the NICU was in retaliation for his complaint of discrimination.[32]  Plaintiff also alleged, again without providing any factual allegations in support, that he was subjected to a hostile work environment because of his race and national origin.[33]

## II.  <u>Summary Judgment Motion</u>

Defendant moves for summary judgment on several grounds: (1) Plaintiff cannot establish a prima facie case of hostile work

---

[29]    <u>Id.</u>

[30]    <u>Id.</u>

[31]    <u>See</u> Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 10.

[32]    <u>Id.</u> at ¶ 11.

[33]    <u>Id.</u> at ¶ 8.

environment, discrimination, or retaliation; (2) Plaintiff cannot rebut Defendant's legitimate nondiscriminatory reasons for its adverse employment actions; and (3) Plaintiff has no valid claim for race or national origin discrimination under Section 1981 based on Eleventh Amendment immunity.

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th

8

Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary

9

judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

### A.  Claims under Section 1981

Defendant argues that Plaintiff cannot establish a cause of action under Section 1981 for discrimination based on national origin.[34] Alternatively, citing Eighth and Ninth Circuit case law, Defendant argues that it has governmental immunity for claims arising under Section 1981.[35]   The court addresses the latter argument.

The Fifth Circuit, citing United States Supreme Court law, has held that the Eleventh Amendment does not apply to counties and similar municipal corporations. Crane v. Tex., 759 F.2d 412, 415 (5th Cir.), amended in part on denial of rehearing, 766 F.2d 193 (5th Cir. 1985)(citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123 n.34 (1984); Lake Country Estates, Inc. v. Tahoe

---

[34]     However, Plaintiff's Asian Indian race entitles him to raise a claim under 42 U.S.C. § 1981.  See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987)(holding that claim of racial discrimination pursuant to 42 U.S.C. § 1981 could be based on Arab ethnicity).

[35]     Those cases, Singletary v. Mo. Dep't of Corr., 423 F.3d 886, 890 (8th Cir. 2005), and Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988), involved a state department of corrections and a state community college district, respectively, and were decided under the Eleventh Amendment.

<u>Regional Planning Agency</u>, 440 U.S. 391 (1979)).   Although Defendant, a county hospital district, is not entitled to raise Eleventh Amendment immunity as a bar to Plaintiff's claims under Section 1981, other legal precedent requires a finding that Plaintiff may not bring direct claims against Defendant pursuant to Section 1981.

In <u>Jett v. Dallas Independent School District</u>, 491 U.S. 701, 731-32 (1989), the Supreme Court held that Section 1981 did not provide a separate cause of action against local government entities.   Instead, plaintiffs are to pursue their rights under Section 1981 pursuant to 42 U.S.C. § 1983 ("Section 1983"). "Section 1983 provides an explicit remedy in damages which, with its limitations on municipal liability, Congress thought 'suitable to carry . . . into effect' the rights guaranteed by § 1981 as against state actors." <u>Jett</u>, 491 U.S. at 733.

As the Fifth Circuit has noted, this is a significant difference: Although respondeat superior liability may be available in a direct action under Section 1981 against a private employer, it is not available in a Section 1983 action.   <u>Felton v. Polles</u>, 315 F.3d 470, 482 (5th Cir. 2002).   In <u>Monell v. New York Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978), the United States Supreme Court held that a local government may only be sued under Section 1983 when the injury has been inflicted by the execution of its official policy.   Thus, in order to hold Defendant liable for violating

11

Section 1981 in this action, Plaintiff must "show that the final policy maker, through its 'deliberate conduct' was the 'moving force' behind the violation." <u>Meyers v. La Porte Indep. Sch. Dist.</u>, Case No. 07-20348, 2007 WL 4467586, at *1 (5th Cir. Dec. 20, 2007)(unpublished)(citing <u>Bryan County v. Brown</u>, 520 U.S. 397, 405 (1997)).

Plaintiff has not made a claim to enforce his rights under Section 1981 pursuant to Section 1983 in his complaint.  The court cannot construe this as a technical omission because he has failed to raise any factual allegation that Defendant violated Section 1981 based on an official policy or based on a decision of a final policy maker.  <u>See</u> <u>James v. Tex. Collin County</u>, 535 F.3d 365 (5th Cir. 2008)(no evidence that county commissioners made the decision to terminate plaintiff rather than his immediate supervisor).

Therefore, Plaintiff's claim made directly under Section 1981 against Defendant is **DISMISSED**.

The court acknowledges that this dismissal is based on a different ground than urged by Defendant.  Accordingly, Plaintiff has ten days from receipt of this Memorandum to file a motion for reconsideration and/or a motion for leave to amend his complaint consistent with the court's opinion if he wishes to pursue a Section 1981 claim via Section 1983.  Plaintiff must attach a copy of his proposed amended complaint to his motion.

**B.  <u>Title VII</u>**

12

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In the present case, Plaintiff alleges that he was subjected to a hostile work environment based on his race and/or national origin. He also claims that his failure to be promoted was based on his race/national origin.  Finally, he claims that his transfer out of the NICU and the Defendant's refusal to transfer him back to the NICU were in retaliation for his filing a complaint of discrimination.  The court addresses each contention in turn.

### 1. **Hostile Work Environment**[36]

In order to maintain a claim of hostile work environment based on national origin or race discrimination, a plaintiff must demonstrate that: 1) he is a member of a protected group; 2) he was subjected to unwelcome harassment; 3) the harassment complained of was based on race or national origin; and 4) the harassment affected a term, condition, or privilege of employment.  Ramsey, 286 F.3d at 268; see also Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003).  Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as

---

[36]    Plaintiff does not argue, or even mention, his hostile work environment claim in his response to Defendant's motion for summary judgment. Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18.  It appears that Plaintiff has abandoned this claim but, out of caution, the court considers the claim on the merits.

the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, rather than merely offensive, and the degree to which the conduct unreasonably interferes with an employee's work performance. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007).

Discourtesy, rudeness, teasing, offhand comments, and isolated incidents (unless extremely severe) do not amount to "discriminatory changes in the terms and conditions of employment." Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (internal quotations omitted); see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The conduct about which the plaintiff complains must be both objectively and subjectively offensive. Shepherd v. Comptroller of Pub. Accounts of the State of Tex., 168 F.3d 871, 874 (5th Cir. 1999). A hostile work environment is one in which the abuse is continuous, not simply episodic. See Faragher, 524 U.S. at 787 n.1.

In the present case, Defendant argues that Plaintiff has offered no evidence of harassment in support of his hostile work environment claim. Citing Plaintiff's deposition, Defendant states that Plaintiff has no facts to support such a claim. The court has reviewed Defendant's deposition and there is no mention of any frequent, severe conduct that was physically threatening or

humiliating or that interfered with his work performance.  Notably, Plaintiff has not responded to Defendant's motion on this claim.

Accordingly, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is **GRANTED.**

## 2.   Race/National Origin Discrimination

To establish a prima facie case of discrimination, the plaintiff must show that he: 1) is a member of a protected class; 2) was qualified for his position; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly situated employees of a different race.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001)(addressing race discrimination claim).  Proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case.  See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005); Okoye, 245 F.3d at 513.  "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals."  Bryant, 413 F.3d at 478.

In the absence of direct evidence, courts analyze discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004).

Under the "modified <u>McDonnell Douglas</u> approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case.  <u>Rachid</u>, 376 F.3d at 312.  Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for its actions. <u>Id.</u>  If the defendant satisfies this burden, then the presumption of discrimination dissolves.  <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142-43 (2000); <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002).   The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)."  <u>Rachid</u>, 376 F.3d at 312 (internal quotation and alteration marks omitted).  If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.  <u>Id.</u>

At his deposition, Plaintiff discussed two instances where he was denied a promotion - at the LBJ Hospital in 2006 and at the BTMC in 2007.  However, Plaintiff only brought suit related to the

position at BTMC.[37]   Although Defendant has moved for summary judgment on both promotions, the LBJ promotion is not properly before the court because it is not mentioned in his complaint.

If Plaintiff wishes to add the LBJ promotion to the pending suit, he has ten days from receipt of this Memorandum to file a motion for leave to amend his complaint.  Plaintiff must attach a copy of the proposed amended complaint to his motion.

With respect to the BTMC promotion, Defendant disputes that Plaintiff was qualified for the position sought.  Specifically, Defendant argues that the BTMC position required the applicant to be a certified Registered Pulmonary Function Technologist and a certified Registered Cardio-Pulmonary Technologist.  Plaintiff conceded that he had neither certification.[38]

---

[37]   See Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 8. There, Plaintiff stated, "Plaintiff applied for a manager/supervisor position as an Operations Manager and that position was give [sic] to another person less qualified than him.  Plaintiff's Indian descent is the only plausible reason he was not given the position since the person hired was an African American and not as qualified as Plaintiff."  Thus, Plaintiff complains about the BTMC position awarded to Robbie Simmons, an African-American.

Plaintiff failed to complain about the BTMC promotion in his charge of discrimination.  A failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation precludes the claim from later being brought in a civil suit.  See McClain v. Lufkin Indus. Inc., 519 F.3d 264, 272-73 (5th Cir. 2008); Thomas v. Tex. Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000) However, exhaustion of administrative remedies in a Title VII case is not a jurisdictional prerequisite to suit but a requirement that is subject to waiver, estoppel and equitable tolling.  Womble v. Bhangu, 864 F.2d 1212, 1213 (5th Cir. 1989)(citing Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982)).  As Defendant has failed to raise exhaustion of administrative remedies as a defense to suit but has moved for summary judgment on the merits of Plaintiff's claim, the court will consider Plaintiff's failure to exhaust administrative remedies on the BTMC promotion to have been waived by Defendant.

[38]   Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 67:4-18, 72:3-20; Ex. C, Exhibits to Deposition of Plaintiff, Ex. 4: Position Title Operations Manager PUL

Generally, if an employee does not have the required qualifications for a position, he cannot establish a prima facie case for discriminatory action by his employer. See Okoye, 245 F.3d at 512-13.  However, Plaintiff claims that the successful candidate was similarly not qualified for the position, citing Force's statement that Simmons lacked "qualifications."[39] Defendant has offered no competent summary judgment evidence on this point and the court is left with a summary judgment record that suggests that a lack of the required certifications did not disqualify Simmons from promotion and that raises the question whether Plaintiff was, in fact, qualified.  Thus, the court finds that there is a fact issue on this prong of Plaintiff's prima facie case.

Other than arguing that Plaintiff was not qualified for the BTMC position based on a lack of certifications, Defendant does not offer any other legitimate, non-discriminatory reason for Plaintiff's non-selection.  As the court finds that a material fact issue exists, Defendant is not entitled to summary judgment on this claim.

---

Diagnostics; Ex. 5: Job Postings Online for Ben Taub Operations Manager Pulmonary Diagnostic; Ex. 6: E-mails between Force and Plaintiff, Feb. 18, 2008.

[39]     Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. B, Deposition of Plaintiff, 78:5-6.

3.   **Retaliation**[40]

In his complaint, Plaintiff alleges two retaliatory actions: (1) that "after Plaintiff filed his employment discrimination complaint he was unexpectedly moved to another department of the hospital" and (2) that "Plaintiff informed the Defendant that his transfer to the other area of the hospital was affecting his health . . . but the Defendant failed to accommodate him thereby retaliating against him because of his initial discrimination compl[ai]nt."[41]   The court will examine each of these claims in turn.

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005).

a.   **Initial Transfer**

Plaintiff cannot meet the first element of a prima facie case of discriminatory retaliation under Title VII with reference to his first transfer.   An employee has engaged in activity protected by

---

[40]      Plaintiff does not argue, or even mention, his retaliation allegations in his response to Defendant's motion for summary judgment. Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 18.   While Plaintiff may have intended to abandon these claims, the court must consider Defendant's motion and dispose of them on the merits.

[41]      Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 11.

19

Title VII if he has either opposed any practice made an unlawful employment practice by Title VII or made a charge, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.  McCoy v. City of Shreveport, 492 F.3d 551, 561 n.28 (5th Cir. 2007).  Plaintiff claims in his Original Complaint that "after Plaintiff filed his employment discrimination complaint he was unexpectedly moved to another department of the hospital."[42]   However, this allegation is belied by Plaintiff's Charge of Discrimination.  According to that document, Plaintiff was notified of his transfer on November 14, 2007.[43]  Plaintiff filed his EEOC charge on November 28, 2007, two weeks after he was transferred.[44]  Thus, the act complained of by Plaintiff occurred two weeks before the EEOC charge was filed and could not, by definition, be considered retaliatory.  Plaintiff has not responded to Defendant's motion on this claim.  Defendant's motion for summary judgment on this claim is **GRANTED**.

### b.   Refusal to Re-transfer

Plaintiff next complains that he was denied reasonable accommodation for his medical condition in retaliation for filing the EEOC charge.  Plaintiff arguably meets the first two elements

---

[42]   Id.

[43]   Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. A, Documentary Evidence, Response of Defendant to Charge, p. 5.

[44]   Defendant's Correction to Ex. A Supporting Defendant's Motion for Summary Judgment, Docket Entry No. 20, Plaintiff's EEOC Charge of Discrimination.

of a retaliatory refusal to reasonably accommodate his needs.
First, the refusal to re-transfer occurred after he filed the EEOC
charge.[45]  Second, refusal to reasonably accommodate an employee's
medical needs can be considered an adverse action on the part of
the employer.  See Burlington N. & Santa Fe Ry. v. White, 548 U.S.
2405, 2410-11, 2412-13 (2006)(expanding the interpretation of
adverse employment action to encompass more than hiring, granting
leave, discharging, promoting or compensating, all traditionally
accepted as qualifying events).

To satisfy the third prong of a prima facie case, Plaintiff
must put forward some evidence of a causal link between the adverse
employment action and the protected activity.  Long v. Eastfield
Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996).  The existence of a
causal link may be determined by examining three factors: (1) the
employee's past disciplinary record, (2) whether the employer
followed its typical policy and procedures in refusing to
accommodate the employee, and (3) the temporal proximity between
the employee's conduct and the refusal to accommodate.  See Dehart
v. Baker Hughes Oilfield Operations, 214 Fed. App'x 437, 442 (5th
Cir. 2007)(unpublished)(citing Nowlin v. Resolution Trust Corp., 33
F.3d 498, 508 (5th Cir. 1994)).  Temporal proximity alone may be a
significant factor, but not necessarily determinative of
retaliation.  Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092

---

[45]     See id.

21

(5th Cir. 1995); <u>see also</u> <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 655 (5th Cir. 2004)(stating that the mere fact that an adverse action occurs after protected activity will not always be enough to establish a prima facie case); <u>Raggs v. Miss. Power & Light Co.</u>, 278 F.3d 463, 471 (5th Cir. 2002)(same and adding that Title VII does not permit employees to ignore work rules or job requirements).

Here, Plaintiff had a history of disciplinary actions throughout his time as an employee with Defendant. Between December 13, 2004, and November 14, 2007, Plaintiff received at least four written warnings regarding argumentative behavior.[46] In October 2007, following the altercation with Fernandez, Plaintiff refused to sign a written counseling form warning him to avoid arguments with fellow staff members; he was then transferred from the NICU work area to the adult respiratory care area.[47] The reasons given for the transfer were Plaintiff's "rude, discourteous and argumentative behavior" and the need for Plaintiff to improve his interactions with co-workers.[48]

---

[46]     Exhibits to Defendant's Motion for Summary Judgment, Docket Entry No. 17, Ex. A, Documentary Evidence, Employee Report of Oppositional and Argumentative Behavior (12/13/04), p. 7; Employee Report—Inappropriate Behavior (11/23/05), p. 10; Employee Counseling Form—Argument with Co-Worker, Disruption (02/08/07), p. 11; Employee Counseling Form—Argumentative Behavior (11/14/07), p. 12.

[47]     <u>Id.</u> at Ex. B, Deposition of Plaintiff, 93:20-106:16.

[48]     <u>See</u> <u>id.</u> Ex. A, Documentary Evidence, Employee Counseling Form—Argumentative Behavior (11/14/07), p. 12.

Plaintiff presented no evidence that he was entitled to another transfer as a reasonable accommodation for his medical condition.   There is no evidence showing that his medical conditions, migraines, light sensitivity and glaucoma, were sufficiently disabling to prevent him from performing his job duties in one area of the hospital but not in another.[49]   There is no evidence that the refusal to return Plaintiff to the NICU was connected in any way to his complaint of discrimination other than Plaintiff's opinion that the two events are related.   Plaintiff conceded that he was told by Defendant's Vice President of Human Resources that he would be approved for intermittent leave under the Family Medical Leave Act if his medical condition required any future treatment, including surgery for the glaucoma.[50]   However, to Plaintiff, the only acceptable accommodation for his medical conditions would be a promotion or a lateral transfer back to the NICU.[51]

Plaintiff has not responded to Defendant's motion for summary judgment on his retaliation claim and has not proffered any non-speculative evidence that would connect the decision not to transfer him back to the NICU to his charge of discrimination.   An employee's subjective belief that he was the victim of

---

[49]   Id. at Ex. B, Deposition of Plaintiff, pp. 120, 125.

[50]   Id. at Ex. B, Deposition of Plaintiff, 125:2-128:24, 149:19-151:18.

[51]   Id. at 151:5-9.

discrimination is insufficient to create an inference of discriminatory intent. <u>Lawrence v. Univ. of Tex. Med. Branch at Galveston</u>, 163 F.3d 309, 313 (5th Cir. 1999). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey</u>, 286 F.3d at 269.

Accordingly, Defendant's motion for summary judgment on this retaliation claim is **GRANTED**.

## IV.   <u>Conclusion</u>

Based on the foregoing, the court **GRANTS IN PART, DENIES IN PART,** Defendant's motion for summary judgment.

**SIGNED** in Houston, Texas, this 28th day of October, 2009.

Nancy K. Johnson
United States Magistrate Judge

24